DECISION
This is an appeal by defendant-appellant, Ralph T. Duffey, from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, entering a decree of divorce and denying defendant's motion for new trial.
On December 1, 1998, plaintiff-appellee, Judy R. Duffey, filed a complaint for divorce against defendant. The complaint alleged that the parties were married on July 3, 1987, and that four children had been born as issue of the marriage.
By entry of the trial court, the matter was referred to a magistrate of the court to consider the issue of the allocation of parental rights and responsibilities. Prior to trial, the parties entered into a "memorandum of agreement" regarding most of the issues concerning the divorce, including spousal support. The agreement set forth a division of all the assets and liabilities of the parties with the sole exception of two parcels of real estate located on Terrapin Lane, Cambridge, Ohio.
On December 2, 1999, the trial court conducted a hearing regarding the disposition of the parcels of real estate on Terrapin Lane. On July 17, 2000, the trial court issued a decision that included the following findings of fact concerning the property. Prior to the parties' marriage in 1987, defendant purchased two lots near Salt Fork State Park in Guernsey County, Ohio. The lot at issue in this appeal contains approximately thirty-three acres and was purchased by defendant on March 1, 1982, for $45,000, subject to a mortgage of $40,000. At the hearing, defendant testified that the current value of the property is $85,000. As of September 30, 1999, the balance due on the mortgage was $8,632.92.
The trial court found that, since the date of the parties' marriage, the mortgage was paid with marital funds, and that plaintiff and defendant had both worked to improve the value of the property. The court noted that, although defendant made some improvements prior to the marriage, "there was no testimony as to the increase in the value of the property resulting from defendant's pre-marital labor." The court found that defendant's $5,000 down payment on the purchase of the property constituted his separate property, but the court further held that defendant failed to meet his burden of proof in tracing or identifying any other separate property interest in the balance of the equity of the land. The court deemed "not credible" defendant's testimony that all of the increase in value to the property was due to his premarital labor and investment, the court finding instead that "[t]he bulk of the mortgage equity clearly occurred during the marriage and was paid by marital funds." The court concluded that the marital equity in the property was $67,882.70. The trial court awarded defendant, as his separate property, $8,484.38 of the equity in the thirty-three acre parcel, representing defendant's initial $5,000 down payment, plus the proportionate appreciation in the value of the property in relation to his separate property investment.
Regarding the second parcel, which was purchased May 22, 1997 and contains 2.3 acres, the trial court found that there was no testimony that the source of the funds for this property was "premarital or otherwise from separate property," and thus the court concluded that this property was marital property. The trial court also found that, both prior to and throughout the marriage, defendant had bought and sold several parcels of real estate. Some of the real estate was purchased by West End Development Company or through different partnerships, while other property was titled in defendant's name or jointly with his wife or with defendant's father. In its decision, the trial court further found that defendant "failed to produce documents, mortgages, deeds, corporate minutes or other corporate documents that should have been accessible to him as the president and part owner of the corporation."
On October 5, 2000, the trial court filed an entry of decree of divorce. Also on that date, a shared parenting decree was filed. On October 19, 2000, defendant filed a motion for new trial pursuant to Civ.R. 59. By decision and entry filed May 22, 2001, the trial court denied defendant's motion for new trial.
On appeal, defendant sets forth the following two assignments of error for review:
Assignment of Error No. 1
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN FINDING THAT APPELLANT'S NON-MARITAL INTEREST IN THE 33 ACRE PARCEL OF REAL ESTATE LOCATED AT 11344 TERRAPIN ROAD, GUERNSEY COUNTY, OHIO, WAS LIMITED TO $5,000.
Assignment of Error No. 2
 THE TRIAL COURT ERRED IN REFUSING TO ADMIT APPELLANT'S EXHIBITS B-1, 2, AND 3 INTO EVIDENCE.
Defendant's assignments of error are interrelated and will be discussed together. The primary issue raised by defendant is whether the trial court abused its discretion in finding that defendant's nonmarital interest in the thirty-three acre parcel of real estate was limited to his $5,000 down payment. Also at issue is the trial court's ruling not to admit defendant's exhibits Nos. B-1, B-2 and B-3.
In Golick v. Golick (Dec. 17, 2001), Clermont App. No. CA99-05-040, unreported, the court noted that:
 In a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital property. R.C. 3105.171(B) and (D). We review the classification of property as marital or separate under a manifest weight of the evidence standard. * * * Under such standard, the trial court's factual findings regarding the classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." * * * The trial court's property award, in turn, will not be reversed absent an abuse of discretion. * * *
 "Marital property" is defined in R.C. 3105.171(A)(3)(a)(i) and (ii) to include "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[,]" and "[a]ll interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage[.]" Marital property does not include any separate property. R.C. 3105.171(A)(3)(b). * * *
Pursuant to R.C. 3105.171(A)(6)(a)(ii) and (iii), "separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage," and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(b) states that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Further, "[t]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Golick, supra.
At the outset, we will address whether the trial court erred in failing to admit certain exhibits offered by defendant at trial. Defendant contends that the trial court erred in failing to admit exhibits Nos. B-1, B-2 and B-3 into evidence. Defendant maintains that the proffered exhibits contain bank information regarding various expenditures made to improve the property, and he contends that the documents buttressed his trial testimony on that issue. Defendant acknowledges in his appellate brief that, "one can imagine a more useful compilation for use at trial in breaking down all of these items," but defendant maintains that the evidence was relevant, especially in light of the fact that he was a pro se litigant at trial. (Appellant's brief at 3.)
The three exhibits at issue are handwritten ledgers, apparently prepared by defendant, purporting to be various expenditures, including labor, materials and costs associated with the purchase of a metal building. Various check numbers are listed on exhibit No. B-1, while exhibit No. B-3 is a ledger primarily pertaining to various alleged labor costs, including those of defendant and his father.
At trial, counsel for plaintiff objected to the introduction of the documents. More specifically, counsel asserted that, "we have gone through the year of discovery, have never been provided anything about any expense for improvements to this property." (Tr. at 52.) Counsel stated that it was not until two days before trial that he received faxes from defendant regarding evidence on this issue. Counsel for plaintiff also argued that the documents should not be admitted based upon hearsay grounds and because of "best evidence" considerations. (Tr. at 74.)
The trial court denied the admission of defendant's exhibits Nos. B-1, B-2 and B-3, stating in part:
 * * * I'm going to sustain Plaintiff's objection to the admission of Defendant's Exhibit B-1, 2 and 3, as they appear to be handwritten ledger pages with check numbers, dates, which do not include years. They appear to show a list of payees and amounts. In that during testimony Defendant did not lay a proper foundation for the admission of this document, proper foundation, nor has he included any backup detail information at any time during these proceedings, I'm going to disallow the admission of Defendant's Exhibit B-1, 2, and 3. [Tr. at 76.]
In general, the admission or exclusion of evidence is within the sound discretion of the trial court, and a trial court's decision on such matters will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27, 32.
Upon review, we cannot conclude that the trial court abused its discretion in failing to admit the documents at issue. As noted above, the exhibits consist of handwritten ledgers, apparently prepared by defendant shortly before trial. During direct examination, defendant provided no testimony concerning the manner in which the documents were created, including the sources of information for the various entries. During cross-examination, defendant stated that various check numbers listed on one of the exhibits came from a bank account, but he provided no other information regarding those records such as copies of cancelled checks that might have supported the handwritten entries. Here, the trial court could have reasonably concluded that there was no sound basis for determining the trustworthiness of the documents, and we find that the court did not err in concluding that defendant failed to lay a foundation for the admission of the exhibits.
On appeal, defendant suggests that this court allow leniency for his failure to lay a proper foundation for the exhibits based upon the fact that he was acting pro se in the proceedings before the trial court. We find defendant's argument unpersuasive, as "the law does not permit us to treat pro se litigants in such a manner." Snow v. Brown (Sept. 4, 2001), Franklin App. No. 01AP-243, unreported. We note that, prior to trial, defendant was represented by counsel, but defendant knowingly elected to represent himself at trial. Having chosen to proceed without counsel, defendant's pro se status did not relieve him of the obligation to adhere to the same standards as litigants who retain counsel. Wesbanco Bank Barnesville v. Balcar (Dec. 21, 2001), Belmont App. No. 00-BA-36, unreported.
We will next address defendant's contention that the trial court erred in finding that his nonmarital interest in the property was limited to his $5,000 down payment. As noted under the facts, defendant purchased the property at issue prior to the marriage. The parties stipulated that the purchase price was $45,000, and the trial court found that defendant had made a $5,000 down payment at the time of the purchase. At trial, defendant testified that the property was currently worth $85,000. During cross-examination, defendant testified that, in accordance with plaintiff's exhibit No. 43, the mortgage balance on the property, as of September 30, 1999, was $8,632.92.
Defendant testified that, at the time of purchase, the property contained two buildings that were in disrepair. According to defendant, one of the buildings had to be torn down and the other building, a barn, needed roof and foundation work. Defendant stated that he cleared trees on the property, and that a mobile home, costing $14,000, was placed on the property. He stated that the current value of the mobile home was $7,000. Defendant also stated that he constructed a metal building on the property, and that the total costs for construction of the building, including his labor, totaled $40,000. Specifically, defendant testified that the actual cost of the metal for the building was $7,000, and that the balance of $33,000 was attributable to his labor, his father's labor and the use of equipment. He stated that both the purchase of the mobile home and the construction of the building were premarital events.
Plaintiff testified that, at the time of their marriage in 1987, the parties lived in the mobile home on the subject property. Plaintiff stated that she performed labor on the property, which included clearing the property, mowing and thinning out pine tree groves. She also did painting, cleaning and other work. During the time the parties resided there, the mortgage was paid on the property.
In its decision, the trial court made the following findings regarding the property at issue:
 Since the date of the parties' marriage, the mortgage was paid with marital funds. Plaintiff and defendant have both worked to improve the value of the property. Defendant made some improvements prior to the marriage but there was no testimony as to the increase in the value of the property resulting from defendant's pre-marital labor. Defendant testified to the value of his labor and the cost of materials but this does not necessarily directly correlate to an increase in the fair market value. In addition, defendant testified that his corporation paid him at times, for his labor on the various properties he or the corporation owned. The court finds that Defendant's $5,000.00 down payment on the purchase of the property is his separate property. The defendant has failed to meet his burden of proof in tracing and/or identifying any other separate property interest in the balance of the equity of the land. Defendant's testimony that all of the increase in the value is due to his premarital labor and investment is not credible. The bulk of the mortgage equity clearly occurred during the marriage and was paid by marital funds. The court finds that the marital equity in this property is $67,882.70.
* * *
 Defendant is awarded $8,484.38 of the equity in Lot 1 as his separate property. This sum represents his initial $5,000.00 downpayment, plus the proportionate appreciation in the value of the property in relation to his separate property investment. * * * Lot 1 * * * shall be immediately listed for sale. * * * From the net proceeds * * * the first $8,484.38 shall be paid to defendant for his separate property interest in Lot 1 and any remaining proceeds shall be equally divided by the parties. * * *
Thus, while the trial court found that defendant's down payment on the property constituted separate property, the court found that defendant failed to present credible evidence that other expenditures he made prior to the marriage increased the value of the property or by how much. As indicated above, the trial court did not find credible defendant's assertion that all of the increase in the value of the property was due to his premarital investment and labor. A review of the record indicates that the trial court had serious concerns about defendant's credibility, and we note that defendant's deposition testimony is replete with instances in which he stated that he could not recall information about various properties or businesses he was involved with. By way of example, when questioned about Duffey Investments, one of his business interests, defendant responded, "I don't remember specifically * * * how it was set up or who was involved in it, whether it was just myself or not." (Defendant Depo. at 27.) Defendant was also questioned regarding plaintiff's exhibit No. 32, a deed of transfer for a parcel in which plaintiff and defendant are listed as the grantors of property and Development West, Inc. is listed as the grantee. When asked why the property was transferred from plaintiff's name to Development West, Inc., defendant stated that he did not "specifically remember." (Defendant Depo. at 45.) Plaintiff's exhibit No. 33, another deed, indicates that the same parcel was subsequently transferred from Development West, Inc. to defendant's name. Again, defendant did not "remember specifically" why that transaction took place. (Defendant Depo. at 46.)
Regarding the property at issue in this appeal, as noted under the facts, defendant testified that he purchased materials for a metal barn for $7,000, and that the value of his labor and his father's labor essentially was worth $33,000. However, the evidence on this issue consisted solely of defendant's testimony as to the cost of materials and his own opinion as to the value of his labor and his father's labor. In the absence of any credible corroborating evidence to support defendant's testimony, the trial court was not required to accept at face value defendant's statements regarding the alleged expenditures or the value of the labor involved, particularly where the court, as trier of fact, found defendant's testimony to be questionable.
More significantly, we find no error with the trial court's determination that there was a lack of credible evidence indicating how defendant's premarital activities, including expenditures and labor to add a mobile home and metal building to the property, actually increased the value of the property. As noted by the trial court, defendant's testimony as to the value of his labor and the cost of materials "does not necessarily directly correlate to an increase in the fair market value." Defendant presented no expert appraisal evidence assigning an increased value to the property as a result of the expenditures and labor, and defendants own testimony failed to show how these improvements increased the value of the premises. Thus, although the property was purchased for $45,000, and the parties stipulated that its current value was $85,000, the record fails to contain sufficient evidence attributing the cause for this increase in value to defendant's premarital activities. Matic v. Matic (July 27, 2001), Geauga App. No. 2000-G-2266, unreported.
We also note that, although defendant obtained title to the property prior to the marriage, there was evidence to support the trial court's finding that the parties paid on the mortgage throughout the marriage with marital funds. Such a reduction in a mortgage during a marriage "is equivalent to a marital investment and is considered part of the marital equity." Goebel v. Werling (July 28, 1999), Summit App. No. 19385, unreported. Further, while there was evidence presented by plaintiff as to the mortgage balance as of September 30, 1999, there was no evidence submitted by defendant as to the outstanding mortgage balance at the time of the marriage. Thus, the trial court did not have information necessary to determine how much principle on the mortgage had been reduced prior to the marriage. In the present case, defendant, as the party seeking to have a particular asset labeled as his own separate property, bore the burden of proof by a preponderance of the evidence. In light of the record in this case, we find that the trial court did not err in concluding that, because of a lack of supporting evidence, defendant's claim for separate property, apart from evidence of his down payment, was not sufficiently traced. Peck v. Peck (1994),96 Ohio App.3d 731, 735.
Based upon the foregoing, defendant's first and second assignments of error are without merit and are overruled.
Accordingly, having overruled defendant's first and second assignments of error, the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations are hereby affirmed.
Judgments affirmed.
BOWMAN and BROWN, JJ., concur.